UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAMIKO SHATTEEN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Case No. |
| | )   1:14-cv-01962 (RJL) |
| OMNI HOTELS MANAGEMENT | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**FILED**

**JUL - 6 2015**

Clerk, U S  District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

(July 6, 2015) [Dkt. #7]

Plaintiff Tamiko Shatteen ("plaintiff") commenced this action on November 20,

2014 against defendant Omni Hotels Management Corporation ("defendant"), for alleged

violations of the Family Medical Leave Act of 1993 ("FMLA") 29 U.S.C. § 2601 *et seq.*

*See generally* Compl. [Dkt. #1].   In response, defendant moved to dismiss the case and

compel arbitration in accordance with the parties' arbitration agreement.   *See* Def.'s Mot.

Dismiss Compl. & Compel Arb. ("Def.'s Mot.") [Dkt. #7].   Upon consideration of the

parties' pleadings, the relevant law, and the entire record herein, the Court GRANTS

defendant's Motion and DISMISSES the case.

## BACKGROUND

Plaintiff began working as a Banquet Coordinator at the Omni Shoreham Hotel in

Washington, D.C. on April 11, 2011.   Compl. ¶ 7.   As a precondition of her

1

employment, plaintiff signed the "Summary of the Amended Omni Arbitration Program"

("Agreement"), which states in relevant part:

> The Company [defendant] and the Associate [plaintiff] hereby consent
> to the resolution by arbitration of all claims or controversies arising out
> of [plaintiff's] application with, employment with, or termination from,
> the Company.  This Agreement is mutual encompassing all claims
> [plaintiff] may have against [defendant] . . . .  *The claims covered by
> this Agreement include . . . claims for violation of any federal, state or
> other statute, ordinance, regulation, or common law.*"

Def.'s Mot. Ex. 1 ¶ 1 [Dkt. #7-3] (emphasis in original).   The details of the arbitration

program are contained in the "Omni Hotels Amended and Restated Dispute Resolution

Program" ("Program"), which the Agreement incorporates by reference.  *See* Def.'s Mot.

Ex. 1; *see generally* Def.'s Mot. Ex. 2 [Dkt. #7-4].   The Program has several pertinent

features.   First, it requires the party requesting arbitration to pay a filing fee of up to

$125.00.   Def.'s Mot. Ex. 2 ¶ 9.   Upon commencement, the parties "shall split the cost

of the first hearing day."   Def.'s Mot. Ex. 2 ¶ 9.   All "other arbitration costs shall be

born by [defendant]."   Def.'s Mot. Ex. 2 ¶ 9.   If, however, the employee "cannot share

the fees described above for financial reasons," he or she "can request the [defendant] to

pay the remainder of the arbitration costs."   Def.'s Mot. Ex. ¶ 9.   Second, the Agreement

precludes the arbitrator from awarding any "punitive or exemplary damages" to plaintiff.

Def.'s Mot. Ex. 2 at ¶ 4.4.   Finally, it allows defendant to modify or revoke the Program

with 14 days' advance notice of its changes, but prohibits any ensuing amendments from

having a retroactive effect.   Def.'s Mot. Ex. 2 at ¶ 16.3.

In March 2014, plaintiff suffered a stroke and requested medical leave pursuant to the FMLA.   Compl. ¶¶ 9-10.   Defendant granted her request.   Compl. ¶ 10.   When plaintiff returned to work on July 21, 2014, she discovered that defendant had terminated her position.   Compl. ¶¶ 15-16.   Shortly thereafter, plaintiff commenced the instant case, alleging violations of the FMLA.   *See* Compl.   Defendant, in response, filed a motion to dismiss the case and compel arbitration pursuant to the parties' signed Agreement.   *See* Def.'s Mot.

## LEGAL STANDARD

Courts reviewing motions to compel arbitration apply the standard for resolving summary judgment motions under Federal Rule of Civil Procedure 56(c).   *See Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008).   Review in this context is limited to "whether or not there [was] a meeting of the minds on the agreement to arbitrate."   *Id.* (citation and internal quotation marks omitted).   Summary judgment is "appropriate only if 'there is no genuine issue'" as to the enforceability of the arbitration agreement.   *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

## DISCUSSION

The Federal Arbitration Act ("FAA"), which governs the Agreement here, creates a strong presumption in favor of arbitration and dictates that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity

3

for the revocation of any contract." 9 U.S.C. § 2. The FAA's presumption of validity

is, however, just that: a presumption. *See Moses H. Cone Mem'l Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 24 (1983) (the FAA reflects a "liberal federal policy favoring

arbitration agreements"). Arbitration agreements remain creatures of contract, and, as

such, parties cannot be required to arbitrate unless they have expressly consented to do so.

*See AT&T Mobility L.L.C. v. Concepcion*, 131 S.Ct. 1740, 1745 (2011) ("[C]ourts must

place arbitration agreements on an equal footing with other contracts."). Arbitration

agreements are therefore subject to the litmus of mutual assent, and may be "invalidated

by generally applicable contract defenses, such as fraud, duress, or unconscionability."

*Id.* at 1746 (citation and internal quotation marks omitted).

Plaintiff, eager to litigate her grievances in this Court, claims that the Agreement is

unconscionable.[1] *See* Mem. P. & A. Opp'n Def.'s Mot. Dismiss Compl. & Compel Arb.

("Pl.'s Opp'n") [Dkt. #9]. Under District of Columbia law, a court can void a contract

that is both procedurally and substantively unconscionable. *See Urban Invs., Inc. v.*

*Branham*, 464 A.2d 93, 99 (D.C. 1983). Unconscionability inheres were the contract

evidences a lack of meaningful choice on the part of one of the signatories and, in

addition, contains manifestly unfair terms. *Id.* For the reasons discussed below, I find

---

[1] Plaintiff does not, however, dispute that the Agreement, if valid, covers her claims under the FMLA. *See* P.'s Opp'n. Nor, as a practical matter, could she. The Agreement clearly encompasses all claims that, like plaintiff's claims in the instant action, allege violations of a federal statute. Def.'s Mot. Ex. 1 ¶ 1. Thus sole issue before the Court is whether the Agreement itself is enforceable.

that the Agreement does *not* unreasonably disadvantage plaintiff and, as such, must enforce its directive.

## I.          Procedural Unconscionability

Plaintiff argues that the Agreement is procedurally unconscionable because she was "forced to sign [it] in front of her employer." *See* Pl.'s Opp'n at 11.   A contract is procedurally unconscionable if a party "lacked meaningful choice as to whether to enter the agreement." *Fox v. Computer World Servs. Corp.*, 920 F. Supp. 2d 90, 97 (D.D.C. 2013).   "Meaningful choice" is a product of the transaction itself and turns on whether the plaintiff "ha[d] a reasonable opportunity to understand the terms of the contract, or [whether] the important terms [were] hidden in a maze of fine print and minimized by deceptive . . . practices." *See Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965).

Plaintiff would have this Court invalidate the Agreement because she "was forced to sign in front of her employer rather than at a later date." *See* Pl.'s Opp'n at 11. However, the mere "fact that the Agreement was presented to [plaintiff] as a condition of [her] employment [and] without further negotiation" does not render it void.   *See Fox*, 920 F. Supp. 2d at 98.   Bargaining disparity exists in nearly every employment contract. But it is neither the province, nor the prerogative, of the judiciary to eliminate the inequities of a typical business relationship.   Courts may only intervene when the contract evidences a gross inadequacy of bargaining power and contains terms that so

unreasonably favor the stronger party that enforcement would shock the judicial conscious. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) ("[I]nequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.").   My judicial conscious is not so aggrieved here.

The signed Agreement, which is entitled "SUMMARY OF THE AMENDED OMNI ARBITRATION PROGRAM," clearly states that it is a "Mutual Agreement to Arbitrate." *See* Def.'s Mot. Ex. 1.   It stipulates, in no fewer than three places, that by signing the Agreement, plaintiff consented "to the resolution by arbitration of all claims" within its ambit.   Def.'s Mot. Ex. 1 ¶ 1.   It is difficult to imagine a more conspicuous proviso.   Further still, the agreement states, in all capital letters: "ASSOCIATE ALSO UNDERSTANDS THAT IT IS HIS/HER RESPONSIBILITY TO REVIEW THE OMNI HOTELS DISPUTE RESOLUTION PROGRAM" for the operative terms.   Def.'s Mot. Ex. 1.   Although plaintiff may regret giving her consent, it is abundantly clear from the Agreement that she was advised not only of the terms of the contract, but also of her responsibility to review the Program details.   *Id.*   Whether she comprehended the ramifications of her decision is, unfortunately for her, irrelevant to its validity.   *See Paterson v. Reeves*, 304 F.2d 950, 951 (D.C. Cir. 1962) ("One who signs a contract which he had an opportunity to read and understand is bound by its provisions.").   The sole

question is whether plaintiff had an *opportunity* to review the Agreement.   She most assuredly did.

## II.        Substantive Unconscionability

Plaintiff next argues that the Agreement is substantively unconscionable because it allows defendant to "unilaterally" revoke its terms, it "waives" potential remedies, and it forces her to bear certain costs.   *See* Pl.'s Opp'n at 11.   A contract is substantively unconscionable only if it unreasonably favors one party.   *Urban Invs. Inc.*, 464 A.2d at 99-100.   Thus, to prevail, plaintiff must show that the Agreement is so outrageously unfair that "no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other."   *See Hill v. Wackenhut Servs. Int'l*, 865 F. Supp. 2d 84, 94 (D.D.C. 2012) (citation and internal quotation marks omitted).   Unfortunately for plaintiff, the Agreement does not meet that threshold.

## A.        Adequacy of Consideration

Plaintiff first argues that the Agreement is illusory because it gives defendant an unfettered right to amend or revoke its terms.   *See* Pl.'s Opp'n at 6-9, 11.   I disagree. An illusory contract is one that "gives consideration that is so insignificant that an actual obligation cannot be imposed."   *Amfac Resorts, L.L.C. v. U.S. Dep't of Interior*, 142 F. Supp. 2d 54, 79 (D.D.C. 2001) (citation and internal quotation marks omitted). However, because "[m]utual agreements to arbitrate are independently sufficient forms of consideration," *Sapiro v. VeriSign*, 310 F. Supp. 2d 208, 214 (D.D.C. 2014), the critical

7

question is whether the Agreement permits "optional performance by defendant," *see*

*Davis v. Joseph J. Magnolia, Inc.*, 640 F. Supp. 2d 38, 45 (D.D.C. 2009).

Two Circuits have provided guidance on this issue in the arbitral context.  Both

held that performance was not optional, and consideration therefore not illusory, when,

notwithstanding the defendant's unilateral right to modify the contract terms, defendant

was prohibited from retroactively applying its changes to pre-existing claims.  *See, e.g.*,

*Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205, 207 (5th Cir. 2012); *Hardin v.*

*First Cash Fin. Servs. Inc.*, 465 F.3d 470, 478-79 (10th Cir. 2006).  The situation here is

analogous.

Plaintiff is correct that defendant may unilaterally modify the Program.  *See*

Def.'s Mot. Ex. 2 ¶ 16.3.  But defendant's discretion is by no means unbounded.  First,

defendant must provide 14 days advance notice of its changes.  *Id.*; Def.'s Mot. Ex. 1 ¶ 5.

Second, any ensuing modifications will not "apply to any claim that has already been

submitted" for arbitration.  Def.'s Mot. Ex. 2 ¶ 16.3; Def,'s Mot. Ex. 1 ¶ 5.  Not only

does the Agreement prevent defendant from retroactively revoking plaintiff's right to

arbitrate, but it also gives plaintiff the option to litigate the case as she wishes.  Simply

stated, once plaintiff receives notice of defendant's decision to amend the Program, she

has two choices.  She can either file her claim under the old Program, or, if she prefers

the terms of the amended Program, she may delay and file under the new program.  The

8

parties, then, enjoy a parity of choice, but not one that creates "optional" performance.[2]

Accordingly, I find that the Agreement is not illusory.

### B.    Availability of Punitive Damages

Plaintiff next argues that the Agreement is invalid because it unlawfully restricts

punitive damages.  *See* Pl.'s Opp'n at 9-10, 11.   I disagree.   To be enforceable,

arbitration agreements must allow litigants to vindicate their statutory rights in an arbitral

forum.  *See Gilmer*, 500 U.S. at 28.   As such, arbitration agreements must "provide[] for

all of the types of relief that would otherwise be available in court."   *Cole v. Burns Int'l*

*Sec. Servs.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997).   The Program's exclusion of punitive

damages is hardly fatal to the Agreement.   Because the FMLA only affords relief for

compensatory damages, punitive damages are unavailable irrespective of the forum.   *See,*

*e.g.*, *Roseboro v. Billington*, 606 F. Supp. 2d 104, 108 (D.D.C. 2009); *Coleman v.*

*Potomac Elec. Power Co.*, 281 F. Supp. 2d 250, 254 (D.D.C. 2003).   Accordingly, I find

nothing substantively unconscionable about an Agreement that restricts plaintiff's

remedies to those she is statutorily due.

---

[2] Indeed, the two cases plaintiff invokes demonstrate that notice of impending changes and limits on a party's ability to retroactively modify the agreement are, in fact, adequate consideration. *See* citing *In re Halliburton Co.*, 80 S.W.3d 566, 570 (Tex. 2002) (holding that an arbitration agreement was not illusory because it required, among other things, 10-day advance notice of any amendments); *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010) (holding that the arbitration agreement was not illusory because defendant could not retroactively modify the

## C.   Arbitral Fees

Plaintiff's final contention is that the Agreement is unconscionable because it requires her to pay a $125.00 filing fee and, in addition, to split the cost of the first hearing day. *See* Pl.'s Opp'n at 10.   While it is certainly possible that "large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights," that is not the case here. *See Green Tree Fin. Corp.—Ala. v. Randolph*, 531 U.S. 79, 90 (2000).   First, with regard to the $125.00 filing fee, plaintiff is not entitled to a free ride.   Our Circuit has explicitly rejected the notion that arbitration exists as "a virtually cost-free alternative to traditional court proceedings." *See LaPrade v. Kidder, Peabody & Co., Inc.*, 246 F.3d 702, 707 (D.C. Cir. 2001).   As such, litigants, regardless of forum, may be required to bear "the cost of filing fees and other administrative expenses." *Cole*, 105 F.3d at 1484.

The fee-splitting provision is similarly unobjectionable.   Where, as here, a plaintiff "seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, [she] bears the burden of showing the likelihood of incurring [prohibitively high] costs." *See Green Tree Fin. Corp.*, 531 U.S. at 92.[3]   Plaintiff has

---

terms).

[3] Plaintiff relies on our Circuit's holding in *Cole v. Burns International Security Services* for the proposition that cost-splitting is per se unenforceable. *See* Pl.'s Opp'n at 10. *Cole*, however, can be read for the narrower proposition that contracts should not make arbitration prohibitively expensive for the plaintiff. *Cole* concerned an arbitration agreement that was silent as to which party bore the costs of arbitration. *See Cole*, 105 F.3d at 1480-81.   Concerned about disproportionate fee shifting, our Circuit interpreted the agreement against the drafter and required the company to pay all arbitration fees. *Id.* at 1484-85. *Cole*'s holding is, in any

done nothing of the sort.   Rather than show how splitting the first day's fee would prejudice her rights under the FMLA, plaintiff relies on vague pronouncements of Congressional intent to support her argument that arbitral fees should never be borne by an employee.   *See* Pl.'s Opp'n at 10.   But invalidation cannot rest on rote objections alone.   In the absence of clear evidence that the fee-shifting clause somehow restricts plaintiff's access to the arbitral forum, the Court declines to invalidate the Agreement.

## CONCLUSION

Thus, for the foregoing reasons, the Court GRANTS defendant's Motion to Dismiss and Compel Arbitration and DISMISSES this action.   An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

event, on shaky ground in light of the Supreme Court's subsequent decision in *Green Tree Financial*, which eschews any per se ban on fee shifting in the arbitral context.   *See Green Tree Fin. Corp.*, 531 U.S. at 92.